LUIS VALENTÍN ET UX., Plaintiffs and Appellees *v.* JACINTO FIGUEROA LARA, Defendant and Appellant.

No. 11638.   Argued November 23, 1955.—Decided June 19, 1956.

*Oscar R. Brizzie* for appellant.   *F. González, Jr.* for appellees.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On October 4, 1954, Luis Valentín and his wife Aurelina González Meléndez filed the present action against Jacinto Figueroa Lara to evict him from the premises he occupied —a concrete house—devoted to business in Juncos. Plaintiffs acquired this real property on February 16, 1954, by purchase from Zoilo Méndez Ríos and his wife Teresa Sánchez. They alleged in the complaint that they had acquired the property for the sole purpose of terminating the lease contract with the defendant—who occupied it on a month-to-month lease with the former owners, paying a rental of $60 per month—because they wanted the premises in good faith to devote it to their own use: to establish there a dry goods business; and that for such purpose they notified him in writing, on March 8, 1954, terminating the contract on March 30, and requesting him to vacate the premises within the term of six months from that date. They sent a copy of such notice by certified mail to the Rent Office of the Economic Stabilization Administration.

After an answer was filed in which defendant denied that the contract with the former owner was a month-to-month lease—alleging that it was for an indefinite term— and that the plaintiffs wanted the premises in good faith to devote it to their own use, and in which the alleged, by way of defense, that the court lacked jurisdiction because the Rent Office had no record of having received a copy of the notice of eviction mentioned in the complaint, and that the defendant's contract with the former owners was accepted and ratified by the plaintiffs after having acquired the property object of the suit, a trial was held on the merits and the trial court rendered judgment sustaining the complaint.

On appeal, the defendant alleges that the trial court erred in holding (1) that it is unnecessary to send a copy of the complaint to the Office of Rent Administration on the filing date of the complaint, and that the complaint states

facts constituting a cause of action although there is no averment to that effect; (2) that the copy of the complaint served upon the office in question on November 15, 1954, was sufficient, notwithstanding the fact that the complaint was filed on October 4, 1954; (3) that it had jurisdiction to take cognizance of the case, and (4) that the plaintiffs acquired the property object of the eviction in good faith, to establish there a dry good business.

■ The first two assignments are untenable.[1] In *Fernández & Hno.* v. *Pérez, ante,* p. 231, we held, in circumstances essentially identical with those of the instant case —notice of the complaint to the Rent Office of the Economic Stabilization Administration 9 days after commencement of the action, without stating in the complaint, therefore, that notice had been sent—that compliance was had with the requirement provided by Administrative Order No. 7 enacted on March 5, 1953, by the Rent Office, the purpose of such requirement being to "send notice to the Economic Stabilization Office in order that, if deemed necessary, it may appear in court in defense of the rights granted by the statute and the regulations to the tenants."

■ The third error assigned as to lack of jurisdiction of the trial court to entertain the action is likewise without merit. The appellant bases his attack on the jurisdiction of the court on the theory that the lease contract with the former owners of the property was admitted and ratified by the new owners and that, for that reason, since the rental of said building did not exceed $1,000—computed per year— jurisdiction of the case was in the District Court pursuant to § 622 of the Code of Civil Procedure.

---

[1] It appears from the record here that after the first hearing was postponed on motion of the defendant, the latter, when the hearing was subsequently held, raised the issue that a copy of the complaint had not been sent to the Rent Office of Economic Stabilization Administration. Plaintiffs acquiesced in open court and requested leave, which was granted by the court, to serve notice of their complaint on the aforesaid agency, as they subsequently did, the parties again having been summoned for the *first* hearing to be held on November 18 of that same year. The trial was held on December 23 following.

To support his contention that the contract was accepted and ratified by the plaintiffs, the appellant relies on a letter dated February 20, 1954—4 days after they had acquired the property in question—sent to him in the name of Aure- lina G. de Valentín by Eligio González, her attorney-in-fact, and which reads as follows:

"I hereby inform you that by public deed before Notary Antonio Figueroa Rivera, the undersigned purchased the prop- erty which you now occupy and which was previously owned by Zoilo Méndez and his wife.

"For such reason and by mutual agreement of the parties we have agreed that as of the 1st of the current month you will pay the rental to my brother, Eligio González, who is at present my attorney-in-fact."

The trial court, however, did not attribute to that letter the scope attributed by appellant, not only in view of the testimony of the attorney-in-fact himself, but also in view of the power of attorney granted to him by the plaintiffs in the city of New York on February 6, 1954—10 days before acquiring the property in question through their attorney-in-fact—and by virtue of which he was authorized to purchase personal or real property in the name and in representation of the plaintiffs, having sufficient power to execute the pertinent documents for such purpose, including specifically the following:

"3rd.—This power is also extended to authorize Mr. Gon- zález Meléndez to establish in the name and in representation of the appearing parties, an action of unlawful detainer against the tenant or tenants occupying the real property that Gon- zález Meléndez might purchase for his principals, the former being also authorized to represent them in the competent court as well as in the Rent Office, and to sign complaints, petitions, or documents of any kind necessary to accomplish the aforesaid purpose."

The trial court concluded that the plaintiffs never accepted or ratified the former lease contract by virtue of the letter of February 20, and believed that the sole purpose

of the letter was to inform defendant that the payment of the rental corresponding to February was to be made to the attorney-in-fact because the former owner had so agreed with the purchaser.

However, that letter is not the determining factor as to whether the new owners accepted and ratified the former lease contract. There is a controlling subsequent fact. When plaintiffs notified the defendant, by letter of March 8, 1954, that they considered "ended as of March 30, 1954, the contract entered into between you and the former owner of said property," and required him "through this letter to vacate the premises, granting you for such purpose the 6-months statutory period, as of March 30, 1954" they merely extended the former lease contract until March 30, 1954, thereby establishing the juridical relation of landlord and tenant for the month of March, since the defendant could legitimately occupy that property under his contract with the former owners, until the last day of the month of February. Even then, of course, they could deny a further extension of that contract, as they did—for the purpose of exercising the action authorized by § 12-A-7 of the Reasonable Rents Act—effective at the end of March, but because of the new contractual relation thus created during said month, the concept of occupant at sufferance is rendered inapplicable, at law, to the defendant. In view of the fact that the annual rental did not exceed $1,000 it was incumbent on the District Court and not on the Superior Court to entertain such action—§ 622 of the Code of Civil Procedure and §§ 10 and 18 of the Judiciary Act of July 24, 1952 (Spec. Sess. Laws, p. 30)—*Maldonado* v. *Rivera*, 72 P.R.R. 822, since here our ruling in the cases of *Torres* v. *Biaggi*, 72 P.R.R. 813; *Díaz* v. *Morales*, 71 P.R.R. 648; *Vidal* v. *District Court*, 71 P.R.R. 544; *Pérez* v. *District Court*, 70 P.R.R. 624; *Vélez* v. *San Miguel*, 68 P.R.R. 534 and others would have no force because this is not the case of an unlawful detainer at sufferance.

■ However, since the action was brought in the Superior Court, which is one of the two Divisions constituting the Court of First Instance—§ 9 of the Judiciary Act, *supra*—and since the proceeding up to the trial was heard in said court, the fact that "a division without jurisdiction or authority" entertained the matter does not warrant, under the present status of our legislation—§ 10 of the Judiciary Act—and of our case law, *Rodríguez* v. *Registrar*, 75 P.R.R. 669, the dismissal of the action nor does it render the judgment void.

■ In his fourth assignment of error the appellant challenges the conclusion of the trial court on plaintiffs' good faith in attempting to recover the property to devote it to their own use. His main argument is that the sole evidence to that effect consisted of the testimony of plaintiffs' attorney-in-fact, Eligio González Meléndez, that testimony being inadmissible because it was hearsay evidence; and that in any event, that evidence is insufficient to establish a clear case of good faith.

We disagree with that assignment. As to the first point, although it is true that the only testimony in the suit is that of the attorney-in-fact, it may not be regarded as hearsay evidence. González Meléndez was related to the plaintiffs: he was Aurelina's brother and Valentín's brother-in-law. Consulted by his sister, and because of his father's poor health, he advised them—when he took a trip to New York, where they lived, repeating what he had previously told his sister and brother-in-law on one of their visits to Puerto Rico—to move to Puerto Rico and establish a business. His sister as well as his brother-in-law worked in New York. His sister obtained the money from her mother-in-law. He knew that his sister was coming to Puerto Rico in order to set up a business, not because she had told him but because it had been decided among the three when he visited the States. His brother-in-law came to Puerto Rico

to obtain money from his mother, from a house which they had in Aguadilla and "he drew the money order."

It is clear that this is not hearsay evidence. The attorney-in-fact, because of his relation to the plaintiffs, took active part in their decision of moving to Puerto Rico to establish a business. It was precisely his advise—through his interest in having his sister near, because of his father's poor health—that prompted the plaintiffs to procure the money for that purpose. The culmination of that decision is represented by the power of attorney which plaintiffs granted him to purchase "personal or real property, or any other kind of property, under the terms, agreements, and conditions which he deems convenient, authorizing him to sign for such purpose any kind of documents which are necessary" as well as to endorse checks and collect their amounts, to execute deeds of sale and to constitute mortgages of deferred price pursuant to the terms and conditions which he should deem convenient. The purpose for which the property object of eviction was acquired is specifically corroborated by the afore-quoted third clause which authorizes him to establish, in their name and representation, "an action of unlawful detainer against the tenant or tenants occupying the real property that González Meléndez might purchase for his principals."

■ Nor can we agree that the evidence is insufficient to establish the good faith required by law under the ground provided by § 12-A-7. In *Heirs of Pérez* v. *Gual*, 75 P.R.R. 361, and in *Roselló Hnos.* v. *Figueroa*, 78 P.R.R. 250, we set forth the meaning of good faith in actions of this kind, indicating in the first case that it means "honestly, without fraud, collusion, or deceit," it being required that the evidence show "that plaintiffs' action has not been motivated by any intention other than to recover the premises for the purpose of operating their business"; and in the second we stated that good faith is "the cleanliness of purpose which satisfies the moral conscience of the trier."

Since good faith is, of course, a requirement for the eviction of a tenant, it must be proved by the plaintiff. That proof must convince the trier that the sole purpose for which he wishes to obtain the leased premises is to devote them to his own use, within the legal standards pointed out, and not merely to procure, for any other purpose, the eviction of the tenant. As we stated in *Roselló Hnos.* v. *Figueroa, supra,* it is a question "of proof of intention which must be inferred from all the surrounding circumstances of the lease contract, and includes the prior and subsequent conduct of the parties involved."

■ In none of the former decisions, however, did we establish or suggest the rule that in all cases where the eviction of a tenant is sought in order to devote the premises in good faith to his own use, the testimony of the interested party himself is essential. Although it is more desirable that it be so, if the trier—as in the case at bar—is morally convinced that the plaintiff is moved by the good faith required by law, his conclusion, supported by the antecedents and surrounding circumstances, must deserve—in the absence of any showing tending to belie the value of that evidence—the same deference as if his conclusion had been based on plaintiffs' own testimony.

The judgment will be affirmed.